# EXHIBIT 1

AO 88A (Rev. 02/14) Subpoena to Testify at a Deposition in a Civil Action

# UNITED STATES DISTRICT COURT
## for the
Eastern District of Virginia

| | |
|---|---|
| Bond Pharmacy, Inc., d/b/a AIS Healthcare | ) |
| *Plaintiff* | ) |
| v. | ) |
| Anthem Health Plans of Virginia, Inc., d/b/a Anthem Blue Cross and Blue Shield | ) |
| *Defendant* | ) |

Civil Action No. 1:22-cv-01343-CMH-IDD

## SUBPOENA TO TESTIFY AT A DEPOSITION IN A CIVIL ACTION

To:    The Health Law Partners, P.C. ("HLP"), 32000 Northwestern Hwy #240, Farmington Hills, MI, 48334

*(Name of person to whom this subpoena is directed)*

☑ *Testimony:* **YOU ARE COMMANDED** to appear at the time, date, and place set forth below to testify at a deposition to be taken in this civil action. If you are an organization, you must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on your behalf about the following matters, or those set forth in an attachment:
See Attachment A.

| Place: Hall, Render, Killian, Heath & Lyman, P.C. 101 West Big Beaver Road, Suite 745, Columbia Center, Troy, MI, 48084 | Date and Time: 08/18/2023 10:00 am |
|---|---|

The deposition will be recorded by this method:    Video and stenographic means

☑ *Production:* You, or your representatives, must also bring with you to the deposition the following documents, electronically stored information, or objects, and must permit inspection, copying, testing, or sampling of the material:  See Attachment B.

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:    07/14/2023

CLERK OF COURT

OR

_____          /s/ Paul Werner
*Signature of Clerk or Deputy Clerk*          *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)*
Bond Pharmacy, Inc., d/b/a AIS Healthcare
, who issues or requests this subpoena, are:
Paul Werner; 2099 Pennsylvania Ave, NW, Suite 100, Wasington D.C.; pwerner@sheppardmullin.com; 202-747-1931

## Notice to the person who issues or requests this subpoena
If this subpoena commands the production of documents, electronically stored information, or tangible things before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88A  (Rev.  02/14) Subpoena to Testify at a Deposition in a Civil Action (Page 2)

Civil Action No.  1:22-cv-01343-CMH-IDD

## PROOF OF SERVICE

### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)*   The Health Law Partners, P.C. ("HLP"),

on *(date)* _____ .

☒ I served the subpoena by delivering a copy to the named individual as follows: _____

via certified mail, return receipt requested at 32000 Northwestern Hwy., Suite 240, Farmington Hills, MI 48334

___ July 18, 2023 _____  on *(date)* _____ ; or

☐ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$   48.45 _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ _____ .

I declare under penalty of perjury that this information is true.

Date:   7/18/2023 _____          _____
                                                    *Server's signature*

                                        Erica R. Rushlow, Admin. Assistant
                                        _____
                                                    *Printed name and title*

                                        Hall, Render, Killian, Heath & Lyman
                                        101 W. Big Beaver Road, Suite 745
                                        Troy, MI 48084
                                        _____
                                                    *Server's address*

Additional information regarding attempted service, etc.:

AO 88A (Rev. 02/14) Subpoena to Testify at a Deposition in a Civil Action (Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1) For a Trial, Hearing, or Deposition.** A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
  **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
  **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
    **(i)** is a party or a party's officer; or
    **(ii)** is commanded to attend a trial and would not incur substantial expense.

**(2) For Other Discovery.** A subpoena may command:
  **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
  **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1) Avoiding Undue Burden or Expense; Sanctions.** A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2) Command to Produce Materials or Permit Inspection.**
  **(A)** Appearance Not Required. A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
  **(B)** Objections. A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
    **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
    **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3) Quashing or Modifying a Subpoena.**

  **(A)** When Required. On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:

    **(i)** fails to allow a reasonable time to comply;
    **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
    **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
    **(iv)** subjects a person to undue burden.
  **(B)** When Permitted. To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

    **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or
    **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
  **(C)** Specifying Conditions as an Alternative. In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
    **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
    **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1) Producing Documents or Electronically Stored Information.** These procedures apply to producing documents or electronically stored information:
  **(A)** Documents. A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
  **(B)** Form for Producing Electronically Stored Information Not Specified. If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
  **(C)** Electronically Stored Information Produced in Only One Form. The person responding need not produce the same electronically stored information in more than one form.
  **(D)** Inaccessible Electronically Stored Information. The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2) Claiming Privilege or Protection.**
  **(A)** Information Withheld. A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
    **(i)** expressly make the claim; and
    **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
  **(B)** Information Produced. If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

---

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Alexandria Division

|  |  |  |
|---|---|---|
| BOND PHARMACY, INC., d/b/a AIS HEALTHCARE, | ) ) ) ) | |
| Plaintiff-Counter Defendant, | ) ) | Case No. 1:22-cv-01343-CMH-IDD |
| v. | ) ) ) | |
| ANTHEM HEALTH PLANS OF VIRGINIA, INC., d/b/a ANTHEM BLUE CROSS AND BLUE SHIELD, | ) ) ) ) | |
| Defendant-Counterclaimant. | ) | |

## NOTICE OF SUBPOENA FOR DOCUMENTS AND TESTIMONY IN A CIVIL ACTION

**PLEASE TAKE NOTICE** that pursuant to Federal Rule of Civil Procedure 45, the attorneys for Plaintiff-Counter Defendant have directed The Health Law Partners, P.C. ("HLP"), 32000 Northwestern Hwy #240, Farmington Hills, MI, 48334, who resides in the Eastern District of Michigan, by subpoena, to attend and testify at a deposition in this civil action and produce documents for inspection and copying. A copy of Plaintiff-Counter Defendant's subpoena is attached hereto as Exhibit 1.

HLP has been commanded to attend and testify about certain topics and produce the documents listed in Attachments A and B of the subpoena on August 18, 2023, at 10:00 a.m. at the law offices of Hall, Render, Killian, Heath & Lyman, P.C., 101 West Big Beaver Road, Suite 745, Columbia Center, Troy, MI, 48084.

**IT IS FURTHER NOTICED** that such testimony will be taken stenographically before a Notary Public or court reporter and may be videotaped. If for any reason the taking of the

-1-

deposition is not commenced on that day, or if commenced and is not concluded on that day, the

taking of the deposition will be continued from day-to-day at the same time and place until the

same shall be completed.


Dated: July 14, 2023


By:
Paul Werner
Imad Matini
Sheppard, Mullin, Richter & Hampton LLP
2099 Pennsylvania Avenue NW
Washington, D.C. 20006
Telephone: 202-747-1931
Facsimile: 202-747-3817
pwerner@sheppardmullin.com
imatini@sheppardmullin.com

*Attorneys for Plaintiff-Counter Defendant*
*Bond Pharmacy, Inc., d/b/a/ AIS Healthcare*

### CERTIFICATE OF SERVICE

I hereby certify that, on July 14, 2023, the foregoing document was served via electronic

mail to the following counsel of record:

Michael E. Lacy
Sarah E. Siu
TROUTMAN PEPPER HAMILTON
SANDERS LLP
P.O. Box 1122
Richmond, Virginia 23218-1122
Telephone: (804) 697-1326
Facsimile: (804) 697-6061
michael.lacy@troutman.com
sarah.siu@troutman.com

Virginia Bell Flynn
TROUTMAN PEPPER HAMILTON
SANDERS LLP
301 S. College Street, 34th Floor
Charlotte, NC 28202
Telephone: (704) 916-1509
Facsimile: (704) 998-4051
virginia.flynn@troutman.com

Callan G. Stein
TROUTMAN PEPPER HAMILTON
SANDERS LLP
125 High Street, 19th Floor
Boston, MA 02110
Telephone: (617) 204-5100
callan.stein@troutman.com

Harry J. Liberman
TROUTMAN PEPPER HAMILTON
SANDERS LLP
875 Third Avenue
New York, NY 10022
Telephone: (202) 704-6000
harry.liberman@troutman.com

By:

-3-

## **ATTACHMENT A**

Pursuant to Rule 45 of the Federal Rules of Civil Procedure and the Local Rules of the United States District Court for the Eastern District of Virginia, Plaintiff-Counter Defendant Bond Pharmacy, Inc., d/b/a AIS Healthcare ("AIS"), hereby requests that The Health Law Partners, P.C. ("HLP"), appear and testify at a deposition in this civil action and produce for inspection and copying at said deposition, in accordance with the Instructions and Definitions herein, all the below-requested documents and things in its possession, custody, or control. The deposition and production of such documents and things will occur at the offices of Hall, Render, Killian, Heath & Lyman, P.C., 101 West Big Beaver Road, Suite 745, Columbia Center, Troy, MI, 48084 on August 18, 2023, at 10:00 a.m. Such testimony will be taken stenographically before a Notary Public or court reporter and may be videotaped. If for any reason the taking of the deposition is not commenced on that day, or if commenced and is not concluded on that day, the taking of the deposition will be continued from day-to-day at the same time and place until the same shall be completed.

## **DEFINITIONS**

The following definitions apply to Attachments A and B:

1.      "You," "Your," or "HLP" shall refer to The Health Law Partners, P.C., and any of its predecessors-in-interest, subsidiaries, affiliates, officers, employees, agents, representatives, attorneys, investigators, or other persons purporting to act on its behalf.

2.      The term "AIS" shall refer to Bond Pharmacy, Inc., d/b/a AIS Healthcare, named Plaintiff-Counter Defendant in the above captioned action, and any of its predecessors-in-interest, subsidiaries, affiliates, officers, employees, agents, representatives, attorneys, investigators, or other persons purporting to act on its behalf.

3.      The term "Anthem," shall refer to Anthem Health Plans of Virginia, Inc., named Defendant-Counterclaimant in the above captioned action, and any of its predecessors-in-interest, subsidiaries, affiliates, officers, employees, agents, representatives, attorneys, investigators, or other persons purporting to act on its behalf.

4.      The term "Complaint" shall refer to the Complaint filed by Bond Pharmacy, Inc., d/b/a AIS Healthcare on November 23, 2022, ECF No. 1, and is attached as Exhibit 1 to this Attachment.

5.      The term "Agreement" shall refer to the Anthem Blue Cross and Blue Shield Provider Agreement between AIS and Anthem, entered in November 2019, and any attachments and amendments to that agreement.

6.      The term "HIT" shall refer to home infusion therapy.

7.      The term "Code S9328" shall refer to Code S9328 under the Healthcare Common Procedure Coding System.

8.      The term "Code S9328 Claim(s)" shall refer to claims submitted by AIS to Anthem using Code S9328.

9.      The term "Drug Claim(s)" shall refer to claims submitted by AIS to Anthem for patient medications.

10.      The term "Claim(s)" shall refer collectively to Code S9328 Claims and Drug Claims submitted by AIS to Anthem.

11.      The term "Subpoena" shall refer to the Subpoena For Documents And Testimony In A Civil Action, dated July 14, 2023, and issued upon HLP.

12.      The term "document," as used herein, is used in its broadest possible sense and means the original and all non-identical copies of any handwritten, printed, typed, recorded,

-2-

electronic (including electronic mail messages ("e-mail") and deleted electronic media that is recoverable in any form) or graphic or photographic material of any kind and nature, including all drafts thereof and all mechanical or electronic sound recordings or transcripts thereof, however produced or reproduced, and including but not limited to accounting materials, accounts, agreements, analyses, appointment books, books of account, calendars, catalogs, checks, computer data, computer disks, computer-generated or stored information, computer programming materials, contracts, correspondence, date books, diaries, diskettes, drawings, e-mails, metadata, faxes, materials in foreign languages, translations of materials in foreign languages, guidelines, instructions, inter-office communications, invoices, ledgers, letters, licenses, logs, manuals, memoranda, memory media or banks (including but not limited to hard disks, floppy disks, diskettes, high capacity removable storage disks, CD-ROMs, DVDs, DATs, and flash memory chips or their functional equivalents), microfilm, minutes, notes, opinions, payments, plans, receipts, recordings, records, regulations, reports, sound recordings, statements, studies, surveys, telegrams, telexes, timesheets, vouchers, word processing materials (however stored or maintained) and working papers, and all other means by which information is stored for retrieval in fixed form. The term "document(s)" also specifically includes any records stored on computer tape or computer disk or otherwise stored by or in a computer, including telephone voice mail or electronic mail, whether or not a hard copy (i.e., paper copy) of the document is or was at any time in existence. A document includes all documents appended thereto and any marked copy thereof. A "marked copy" is any document containing any writing or any markings of any kind in the text, in the margins, or on the reverse side of the document.

13.     The terms "and" and "or" are both conjunctive and disjunctive so as to be inclusive rather than exclusive.

14.     The terms "any" and "all," as used herein, shall mean "any and all," and shall be construed so as to bring within the scope of the request any information that otherwise might be construed to be outside its scope.

15.     The term "communication," as used herein, means and includes any transmission or exchange of information, including facts, ideas, inquiries, or otherwise, between two or more persons, whether orally or in writing, and including without limitation all oral, visual, or other sensory (including electronic) means of transmitting information, messages, or statements.

16.     The terms or phrases "relating to," "relates(s)," "related to," or "concerning," as used herein, shall mean constituting, comprising, consisting of, setting forth, describing, discussing, citing, regarding, pertaining to, mentioning, proposing, showing, disclosing, containing, analyzing, explaining, summarizing, supporting, evidencing, authorizing, concerning, embodying, reflecting, identifying, incorporating, considering, recommending, continuing, enumerating, dealing with, commenting on, referring to directly or indirectly, dealing with, or in any way pertaining to, in whole or in part.

17.     The term "person" as used herein shall include any natural person, corporation, partnership, association, joint venture, sole proprietorship, firm, business enterprise, governmental or quasi-governmental body or agency, or legal entity of any type, and includes both the singular and plural.

## DEPOSITION TOPICS

1.     The corporate designee's position, duties, and knowledge of and/or involvement in the above-referenced litigation and/ or knowledge of underlying facts and circumstances giving rise to the litigation.

2.     The corporate designee's preparation for deposition.

3.     Your efforts to comply with the Subpoena and search for and produce documents requested under Attachment B to the Subpoena.

4.     Your knowledge of AIS's products and services, including but not limited to HIT services provided to Anthem's members.

5.     Your knowledge of AIS's billing practices, including but not limited to AIS's billing of Code S9328.

6.     Communications with any third party, including but not limited to payors and/ or government entities, regarding AIS, its products and services, or its billing practices.

7.     Communications with any third party, including but not limited to payors and/ or government entities, related to any dispute involving AIS.

8.     All documents produced pursuant to the Subpoena.

9.     The allegations of the Complaint.

## ATTACHMENT B

## GENERAL INSTRUCTIONS

1.     You are requested to produce documents as they are kept in the usual course of business or you may organize and label the produced documents to correspond by number with these Requests.

2.     The documents requested herein shall include all documents in your possession, custody or control, and all documents that you obtain from partners, attorneys, investigators, agents, affiliates or other representatives.

3.     You are required to make a diligent search of all records and materials in your possession, custody, or control to satisfy your obligation to respond fully and completely to the Requests.

-5-

4.    You are requested to produce the original of all documents called for herein, as well as any copies of documents bearing any mark or notation not present on the original.

5.    If you cannot or do not produce all documents responsive to a request, you should so state and should produce as many responsive documents as you can produce.  If you withhold a document from production based on a claim of privilege, you must provide for each such document a statement of the claim of privilege and all facts relied on in support thereof, including, but not limited to, the authors, addressees, and other recipients, dates, titles, subject matters, location and request or requests to which the document is responsive.  For each author, addressee and recipient, state the person's full name, title, and employer or firm and denote all attorneys with an asterisk.  For each document withheld under a claim that it constitutes or contains attorney work product, you should provide all of the information required herein for privileged communications and also state whether you assert that the document was prepared in anticipation of litigation or for trial and, if so, identify that litigation.  You must provide all non-privileged portions of any responsive document claimed to be privileged or protected.

6.     Whenever necessary to bring within the scope of the request the broadest possible range of documents, the singular form of the word shall be interpreted as plural and references to one gender shall include the other gender.

7.    These requests are of a continuing nature and you are required to serve supplemental responses if you obtain or become aware of additional responsive documents after the date of your initial response.

## DOCUMENT REQUESTS

1.    Nonprivileged documents and communications related to AIS.

-6-

2.     Nonprivileged documents and communications with any third party, including but not limited to payors and/ or government entities, related to AIS, its products or services, billing practices, or any disputes involving AIS.

3.     Nonprivileged documents and communications related to AIS's Drug Claims.

4.     Nonprivileged documents and communications related to AIS's Code S9328 Claims.

5.     Nonprivileged documents and communications concerning any litigation, review, or investigation involving AIS between You and Anthem.

6.     Nonprivileged documents and communications concerning any litigation, review, or investigation involving AIS between You and any third-party other than Anthem, including but not limited payors and/ or government entities.

7.     Nonprivileged documents and communications concerning any involvement by You in any investigation of AIS's billing practices, including any reports, complaints, audits, or expert reviews related to AIS.

# EXHIBIT 1

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Alexandria Division

|  |  |  |
|---|---|---|
| ———————————— | ) |  |
| **BOND PHARMACY, INC., d/b/a AIS HEALTHCARE,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **Case No.** |
| | ) | |
| **v.** | ) | **COMPLAINT FOR DAMAGES AND** |
| | ) | **DECLARATORY RELIEF** |
| **ANTHEM HEALTH PLANS OF** | ) | |
| **VIRGINIA, INC., d/b/a ANTHEM** | ) | |
| **BLUE CROSS AND BLUE SHIELD,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| ———————————— | ) | |

## COMPLAINT FOR DAMAGES
## AND DECLARATORY RELIEF

Plaintiff Bond Pharmacy, Inc., d/b/a AIS Healthcare ("AIS"), brings this Complaint for damages and declaratory relief against Defendant Anthem Health Plans of Virginia, Inc., d/b/a Anthem Blue Cross and Blue Shield ("Anthem"), and alleges as follows:

## INTRODUCTION

1. As a last resort, AIS reluctantly initiates this litigation against Anthem, one of the largest healthcare insurance companies in the world, because it has wrongfully refused for years to pay for the ongoing vital care AIS provided to its members. Anthem has repeatedly acknowledged that it is contractually obligated pay AIS for that care, and even assured AIS that it would. But instead of making good on its repeated promises and contractual commitments, Anthem has engaged in a never-ending series of stall tactics to delay and deny payments.

2. At first, Anthem imposed new administrative roadblocks, requiring AIS to submit additional information and resubmit its claims. When AIS did so, Anthem then came up with

-1-

various shifting excuses to deny claims and recoup payments. Then, when AIS explained to Anthem that its excuses were baseless, Anthem strung AIS along with assurances of payment and offers to negotiate. While AIS relied on those assurances, and sought an informal resolution in good faith (even delaying submission of claims to further a resolution), it has finally become clear that Anthem has no intention of paying AIS or negotiating a resolution.

3.    Recognizing that Anthem's assurances are just another empty promise and part of its perpetual game to delay and deny AIS contractual payments, and having exhausted every avenue to obtain an informal resolution, AIS therefore now seeks relief, including damages.

4.    AIS is an accredited compounding pharmacy and leading national provider of specialized home infusion therapy ("HIT") services. These services allow patients suffering severe conditions, such as multiple sclerosis and cancer, to receive custom medications through surgically-implanted intrathecal pumps that deliver targeted relief daily. As a result, these ambulatory patients may go on with their daily lives while receiving vital treatment at home or wherever they go.

5.    AIS provides patients with a specific subset of HIT by developing and dispensing medication that is infused through implantable intrathecal pumps. But AIS does more than develop custom, sterile, and stable drugs that are administered through patients' implanted pumps. AIS also provides all patients with access to a host of ongoing care and services, such as clinical services, coordination of patient care, 24/7 patient monitoring, nursing services, and billing support services.

6.    Given AIS's reputation and capabilities, Anthem partnered with AIS in November 2019 for AIS to provide its specially compounded drugs and HIT services to Anthem's members under the Anthem Blue Cross and Blue Shield Provider Agreement ("Agreement").

7.      Under the Agreement, Anthem agreed to pay AIS's claims for providing patient-specific medications, as well as "per diem" charges for its HIT services.  Drugs and HIT are billed separately under unique billing codes pursuant to the Agreement

8.      Per diem charges apply each day a given patient is provided access to a prescribed therapy – that is, the medication.  That is because AIS maintains continued responsibility for each patient for so long as they are on AIS's medications and incurs substantial overhead costs to ensure continued access to its therapy.

9.      The per diem is intended to compensate AIS for the substantial costs required to provide patients with ongoing care and access to its therapies.  Without the per diem, AIS could not recover its costs and thus would be unable provide Anthem's members with continued access to its HIT therapy.

10.     For patients using intrathecal pumps, the per diem applies each day the patient has access to their medication as it continuously infuses through a catheter that sits in the patient's spinal fluid.  This approach has been approved by the National Home Infusion Association ("NHIA"), and is applied to AIS's claims under the Agreement.

11.     Accordingly, for months after entering the Agreement, AIS billed Anthem for its drugs.  It also billed Anthem separately for providing its members access to its therapy in accordance with the NHIA Standards.  For both types of claims, Anthem approved and paid them without issue.

12.     Beginning in late 2020, however, Anthem began intentionally and willfully breaching its contractual obligations in bad faith.  It refused to pay AIS's claims and began to recoup payments without any valid basis.  Anthem failed to provide any consistent or credible justification for its conduct.

-3-

13.     Instead, Anthem deployed a variety of bad faith tactics to deny AIS's claims.  It adopted ever-changing drug submission requirements to fabricate supposed grounds for denying AIS's drug claims and recouping payments.  It repeatedly issued new policies for how AIS was required to submit its drug claims without affording AIS any opportunity or time to resubmit its claims.  And Anthem further provided inconsistent guidance to AIS on its submission requirements.

14.     And then, Anthem suddenly accused AIS of improperly billing its per diem claims as well.  Anthem alleged that the Agreement barred AIS from billing the per diem where a patient's medication was shipped to a treating physician's office – even though it previously approved and paid AIS's per diem claims without issue for months.

15.     Anthem also continued to refuse to pay AIS's per diem claims even after it investigated AIS and determined that it properly billed those claims in accordance with the Agreement and NHIA Standards.

16.     In hopes of addressing Anthem's improper denials, AIS sought for nearly two years to negotiate an informal resolution of the parties' dispute.  After each meeting between the parties, Anthem agreed that it would pay AIS all outstanding amounts after AIS resubmitted its claims.

17.     But Anthem has reneged on its promises.  It instead continues to refuse to pay AIS's claims and recoup paid amounts while demanding AIS provide drugs and HIT to Anthem's members for free.

18.     To date, Anthem has denied and recouped over $525,000 in per diem and drug claims.

-4-

19.     Left with no other alternative, AIS now initiates this litigation to obtain damages and declaratory relief, in addition to all other appropriate relief, including an award of its fees and costs.

## PARTIES

20.     AIS is a licensed pharmacy and leading specialized HIT provider that provides substantial value to patients, providers, and payors.  AIS provides bespoke patient medications that are administered through intrathecal pumps.  AIS also provides its patients with ongoing patient care and monitoring services, among other services.

21.     AIS is incorporated in Mississippi with its principal place of business in Clinton, Mississippi.

22.     Defendant Anthem Health Plans of Virginia, Inc., d/b/a Anthem Blue Cross and Blue Shield is a Virginia associate entity of Anthem Blue Cross and Blue Shield, one of the largest health insurance companies in the U.S. that has almost 40 million members and annual revenues of over one hundred billion dollars.  Thousands of Anthem's members receive specially compounded medications and critical HIT services from AIS pursuant to the parties' Agreement.

23.     Anthem is incorporated in Virginia and has its principal place of business in Richmond, Virginia.

## JURISDICTION AND VENUE

24.     The Court has diversity jurisdiction over this action pursuant to 28 U.S.C § 1332 because there is complete diversity between the parties.

25.     For purposes of diversity jurisdiction, a corporation is a citizen of the State in which it is incorporated and has its principal place of business.  *See* 28 U.S.C. § 1332(c)(1); *Jones v. Wells Fargo Co.*, 671 F. App'x 153, 154 (4th Cir. 2016).

26.     AIS is a citizen of Mississippi because it is incorporated and has its principal place of business there.

27.     Anthem is a citizen of Virginia because it is incorporated and has its principal place of business there.

28.     The parties are therefore diverse for jurisdictional purposes.

29.     The amount in controversy also far exceeds the sum or value of $75,000.  *See* 28 U.S.C. § 1332(a).

30.     Anthem has wrongfully refused to pay and recouped payments to AIS for drugs and HIT services totaling no less than $525,000.

31.     The Court has personal jurisdiction over AIS because AIS contracted to provide services to Anthem's members in Virginia and was injured through Anthem's actions in Virginia.  *See* Va. Code Ann. § 8.01-328.1(A)(2)-(3).

32.     Anthem is subject to the personal jurisdiction of this Court.  Anthem is formed under the laws of the Commonwealth of Virginia and transacts business there.  *See id*. § 8.01-328.1(A)(1).

33.     Additionally, the Agreement is governed and construed in accordance with the laws of the Commonwealth of Virginia, where Anthem has its primary place of business.  Agreement § 9.8.

34.     Venue is proper in this District pursuant to 28 U.S.C. §§ 104(b)(1) & 1391(b)(2) because a substantial part of the events giving rise to AIS's claims against Anthem occurred in this District.  Among other things, Anthem entered and breached the agreement with AIS in this District, including by denying and refusing to pay AIS's claims and recouping past amounts for drugs and HIT services AIS has provided to Anthem's members in this District.  *See id*.

## FACTUAL ALLEGATIONS

### *AIS Provides Specialized Patient Medications And HIT Services*

35.     AIS is a licensed pharmacy and healthcare provider that offers specialty HIT and related services.

36.     HIT is the creation, dispensing, and infusing of medication by parenteral means.[1]

37.     Under this therapy, patients receive a continuous, daily treatment at home – as opposed to an in-patient, hospital setting – and can resume normal lifestyles and work activities while recovering from illness.  If this therapy were not available, these patients would either have to take mind-addling oral opioids (and be exposed to their potentially devastating side-effects) or live out their days in an in-treatment facility.

38.     HIT is typically prescribed for patients who have serious and abiding illnesses such as chronic pain resulting from cancer, multiple sclerosis, spinal cord injuries, or other debilitating conditions.

39.     HIT carries substantial and well-recognized benefits for patients and payors.  By receiving treatment at home or other out-patient locations, patients are able to "resume normal lifestyles and work activities while recovering from illness."[2]  And HIT is far less costly than inpatient treatment at a hospital or skilled nursing facility.

40.     Typically, an accredited and licensed compounding pharmacy is responsible for providing HIT and provides a wide range of services to administer specialty drugs and care management services.

---

[1]  NHIA, *About Home & Specialty Infusion*, https://www.nhia.org/about-infusion-therapy/ (last visited Nov. 23, 2022).
[2]  *Id.*

41.     Unlike a standard pharmacy that mass-produces commercial medications, a compounding pharmacy customizes each patient's medication to account for specific dosage, strength, content, and sterility requirements.

42.     AIS operates in a specialized area of HIT.  AIS develops and dispenses patient-specific compounded medications at the direction of a patient's treating physician that are continuously infused via implanted intrathecal pumps.[3]

43.     The pumps are surgically implanted and filled with prescribed medication that the pump continuously infuses through a catheter to the patient's spinal column.

44.     "Infusion" refers to the continuous release of AIS's medication as it proceeds through a patient's pump.  The infusion is separate and apart from the refilling of the pump with medication conducted by a physician or nurse.

45.     "Dispensing" is the custom compounding and delivery of the medication to the patient.

46.     Intrathecal pumps can infuse the patient's medication daily for up to 180 days before needing to be refilled.  However, the medications used for intrathecal pumps have to be specially prepared for each patient to remain sterile, stable, and infuse daily.  Otherwise, the medication will not infuse properly and undermine the patient's plan of care, as well as result in harm to the patient and implanted pump.

47.     AIS invests substantial capital and resources into making the highest quality medications for patients that will properly operate within their intrathecal pumps for extended periods of time.

---

[3]  Mayfield Clinic, *Pain Pump (intrathecal drug pump)*, https://d3djccaurgtij4.cloudfront.net/pe-pain-pump.pdf  (last visited Nov. 23, 2022).

48. To produce drugs that can be infused for up to 180 days, AIS must undertake costly and specialized processes.[4]

49. For example, AIS's pharmacists compound patient-specific medications in a certified clean-room that undergoes extensive continuous testing and quality checks. And both the raw drug materials used in AIS's medications and the finished medications undergo extensive testing to ensure 100% accuracy and sterility for all patients.

50. Moreover, AIS develops its medication based on patient-specific care plans and conditions, which requires it extensively to coordinate and communicate with a patient's care provider on an ongoing basis.[5]

51. In addition to preparing bespoke compounded medications, AIS also invests substantial resources to provide patients with ongoing care and services. That is because as soon as a patient receives AIS's medications, the patient is considered "on-service" with – that is, under the care of – AIS.

52. The patient remains on-service for so long as the patient has access to AIS's medication through the patient's implanted pump. And so long as a patient remains on-service, AIS has an ongoing responsibility to make sure the patient is cared for at all times while prescribed its medications.

53. To meet that ongoing responsibility, AIS provides patients with ongoing care and a range of available services, including continuous patient monitoring, professional pharmacy services, care coordination, nursing services, billing and financial support services, and

---

[4] AIS Healthcare, *About AIS Healthcare*, https://aiscaregroup.com/about/ (last visited Nov. 23, 2022).
[5] *Id.*

-9-

administrative services.  These services are available to patients as desired or necessary for no additional charge.

54.     Among other services, AIS has a call-center that provides all patients and treating physicians with "24-7/365" telephone access to pharmacists and nurses for treatment- and billing-related support.[6]

55.     AIS also employs a team of nurses who provide in-patient care and coordinate other patient care and activities.

56.     AIS nurses can go to a patient's home to provide care, if necessary, as well as connect with patients and providers by phone to discuss care plans and address other questions.

### The Parties' Agreement

57.     In 2019, Anthem entered an Anthem Blue Cross and Blue Shield Provider Agreement ("Agreement") with AIS to provide specially compounded drugs and HIT to its members.  Agreement §§ 2.6 & 8.1.[7]

58.     **Billing For HIT And Patient Drugs.**   Under the Agreement, AIS bills its claims for HIT services to Anthem under specific codes established by the Healthcare Common Procedure Coding System ("HCPCS).  *See* Agreement, Plan Compensation Schedule §§ I-II & PCS Attachment §§ I–III.

59.     Anthem agreed to pay AIS for providing HIT services to its members in accordance with the per diem reimbursement model established by the NHIA.  *Id.* §§ 2.5-2.6 &

---

[6]  *Id.*
[7]  The Agreement contains a confidentiality provision as well as sensitive personal information. A copy of the Agreement and related correspondence will be filed separately upon the entry of an appropriate protective order.

9.7.  The parties specifically contemplated and agreed on the NHIA's per diem reimbursement model when negotiating the Agreement.

60.     Using HIT-specific billing codes, AIS bills a negotiated per diem each day a patient has "access" to a "prescribed therapy," that is, the medication.[8]

61.     The per diem rate is intended to bundle, under one code, all of the many varied costs and expenses that HIT providers incur to develop the therapy and provide patient care and services.

62.     For patients with intrathecal pumps, the per diem applies each day the patient is on the pump and the pump infuses the medication.  *See* Agreement, Plan Comp. Schedule § III.

63.     Consistent with the purpose of HIT to allow patients to go about their daily lives while receiving treatment, there does not need to be a daily interaction between the HIT provider and patient for a per diem to apply.

64.     But the provider still maintains "continued responsibility for the patient" and "incurs costs related to such responsibilities" while the patient is on service.[9]

65.     Under the Agreement, AIS bills its per diem charges under Code S9328, which applies specifically to providers, like AIS, that treat patients with implanted intrathecal pumps.

66.     Code S9328 bundles multiple covered services into one per diem charge, meaning a provider may bill that code whenever it provides at least one of the covered services.

---

[8]  NHIA, *National Coding Standard for Home Infusion Claims under HIPAA* at 93, https://nhia.org/wp-content/uploads/2021/12/NHIA_Code_Std_2022-FINAL.pdfNHIA (last visited Nov. 23, 2022).
[9]  *Id.*

-11-

67.     Code S9328 includes "implanted pump pain management infusion," "administrative services, professional pharmacy services, care coordination, and all necessary supplies and equipment . . . per diem."[10]  *Id.*, PCS Attachment § III.

68.     A provider properly applies a per diem charge under Code S9328 whenever it provides one of the covered services.  *See id.*

69.     As such, AIS may bill Code S9328 each day a patient has access to the medication.  AIS may also bill the per diem for providing any one of the other listed covered services.[11]

70.     This billing model has been approved and adopted by multiple payors in addition to Anthem.  For example, the Blue Cross Blue Shield Association and Blue Cross Blue Shield of Mississippi have publicly concluded that AIS's per diem billing practices comply with the NHIA's reimbursement model and are entirely proper and valid.  *See* Exhibit ("Ex.") 1.

71.     Charges for drugs and nursing services are not included in the per diem and are billed and reimbursed separately.  *See* Agreement, PCS Attachment §§ I-II.

72.     AIS separately bills Anthem for each patient's custom, compounded drug and its materials using the appropriate HCPCS and National Drug Codes ("NDCs").[12]  *Id.*, Plan Compensation Schedule §§ I-II & PCS Attachment § I.

73.     ***Payment & Recoupment***.  Anthem agreed to reimburse AIS for providing HIT services and drugs to its members under the Agreement.  Agreement §§ 2.5-2.6.

---

[10]  *Id.* at 107.
[11]  *Id.* at 93.
[12]  An NDC is a unique, three-segment number which serves as the FDA's identifier for human drugs.  FDA, *National Drug Code Directory*, https://www.fda.gov/drugs/drug-approvals-and-databases/national-drug-code-directory (last visited Nov. 23, 2022).

74. Anthem further agreed to process AIS's claims in accordance with the NHIA Standards. *Id.* § 9.7.

75. If Anthem overpays a claim, Anthem may recoup the payment. *Id.* § 2.7. But Anthem cannot do so unless it provides AIS with 30 days' written notice and affords AIS an opportunity to dispute the recoupment. *Id.*

### *Anthem's Ongoing Breaches Of The Agreement*

76. After the parties entered the Agreement in 2019, Anthem paid AIS's claims without issue for months.

77. AIS properly billed for providing patient medications under the appropriate NDCs and HCPCS codes.

78. AIS also properly submitted claims under Code S9328 in accordance with the Agreement and NHIA Standards.

79. Anthem accordingly approved and paid AIS's claims.

80. But beginning in October 2020, Anthem abruptly stopped paying AIS's claims, and recouped payments made to AIS.

81. Under the guise of policy changes, amendments, and claim audits, Anthem fabricated ever-changing and specious justifications for refusing to pay AIS and recouping payments.

82. Anthem has continued to deny claims and recoup payments even after committing on numerous occasions to pay AIS all outstanding amounts.

83. ***Anthem Refuses To Pay AIS's Drug Claims.*** In October 2020, Anthem allegedly reviewed AIS's drug claims.

84.     AIS billed for patient drugs in compliance with the Agreement's billing and processing procedures, using appropriate NDCs and HCPCS codes.

85.     Anthem nevertheless asserted AIS's billing practices were incorrect because the drugs "should not be reported" using certain NDCs that Anthem had previously required.

86.     Anthem refused to pay the submitted drug claims and began to recoup payments made in 2020.

87.     Acting in good faith, AIS modified its billing practices for drug claims by using Anthem's newly requested NDCs.

88.     Months later, however, Anthem asserted AIS must instead bill its claims using an HCPCS code.  Anthem therefore refused to pay AIS's claims for drugs billed under the new NDCs that Anthem previously requested.

89.     In response, AIS again modified its billing practices and resubmitted its claims.

90.     Anthem further agreed to pay AIS's drug charges and cease recoupments after AIS resubmitted the drug charges for processing.

91.     But to date, Anthem has refused to pay all but a fraction of AIS drug charges, and has continued to recoup payments.

92.     And in October 2022, nearly two years after the start of this dispute, Anthem informed AIS that it will not pay any of AIS's current or future drug claims.

93.     As of the filing of this Complaint, Anthem owes AIS no less than $525,000 in outstanding drug claims.

94.     ***Anthem Refuses To Pay AIS's Per Diem Claims.***  Anthem has also refused to pay AIS's per diem claims for fabricated and unsupported reasons.

95.     For months after entering the Agreement, Anthem approved and paid AIS's per diem claims without issue.

96.     Nevertheless, in December 2020, Anthem abruptly accused AIS of improperly billing its claims.

97.     Anthem audited hundreds of AIS's per diem claims ("Audited Claims").

98.     The Audited Claims were billed under Code S9328 in compliance with the NHIA Standards and the Agreement.

99.     Following its audit of AIS's claims, Anthem asserted that AIS only "acted as a drug distributor" and "supplied" patient medications, but did not provide any HIT services.

100.    AIS met with Anthem to explain its per diem billing practices and provided documentation establishing that patients had access to their prescribed therapy.

101.    Anthem accepted AIS's explanations and justifications for its billing practices. Accordingly, Anthem agreed to pay the Audited Claims.

102.    But despite agreeing to pay the Audited Claims, Anthem failed to do so.  Anthem again refused to pay AIS's per diem claims and threatened to recoup payments.

103.    AIS promptly disputed Anthem's conduct.  AIS notified Anthem of its ongoing breaches on March 30, 2021.

104.    Anthem did not respond to AIS's correspondence for months.

105.    During that time, Anthem continued to deny payment of AIS's claims while AIS continued to provide Anthem's members with access to its therapy.

106.    Anthem did not respond to AIS's March correspondence until June 10, 2021.

107.    In its response, Anthem provided a new "basis" for refusing to pay AIS's per diem claims and initiated another audit of AIS's claims.

108.    This time, Anthem alleged that the per diem claims were "not covered when the drug is shipped to the doctor's office."

109.    But the Agreement does not limit or condition per diem charges based on where the drug is dispensed.  For good reason: patients have access to AIS's therapy – including its medications and ongoing care and services – for so long as they are prescribed its medications and regardless of where the pump is filled or refilled.

110.    They are also under AIS's care for as long as they have access to its therapy, which authorizes AIS to bill the per diem for each day of access after the pump is refilled.

111.    On June 28, 2021, AIS disputed Anthem's allegations and again demanded Anthem cure its breaches and cease all planned recoupments.

112.    Anthem did not respond to AIS's demand for almost a year, and instead continued its improper conduct.

113.    In December 2021, Anthem and AIS amended the Agreement to address its per diem claims.  The parties agreed that AIS could continue to bill the per diem as provided under the NHIA Standards, except on days where a patient's pump was refilled at a physician office instead of the patient's home.

114.    But shortly after amending the Agreement, Anthem placed AIS on prepayment review and demanded AIS to provide thousands of medical records and other support for its per diem charges.

115.    At no point did Anthem ever inform AIS of what medical records were missing from AIS's claim documentation or direct AIS to any policy on the issue.

116.    After placing AIS on prepayment review, Anthem threatened to initiate recoupments.

-16-

117.    Despite Anthem's lack of guidance, AIS provided Anthem with all available medical records for the disputed claims on prepayment review.

118.    In February 2022, Anthem removed AIS from prepayment review status, finding that AIS fully "cooperat[ed]" with the review process and AIS's per diem claims were proper.

119.    Anthem further admitted in subsequent meetings that AIS's billing practices were proper and agreed to pay AIS's per diem claims.

120.    Yet, Anthem never paid AIS's per diem claims.

121.    In May 2022, AIS again notified Anthem of its breaches and demanded Anthem pay all outstanding amounts.

122.    In response, and despite agreeing to pay AIS's claims, Anthem (again) accused AIS of improperly billing.  This time, it asserted that AIS could not bill the per diem *for any days* after a patient's pump was refilled if the refill occurred anywhere other than the home – even though the patient remained on-service with AIS and had access to its therapy and services.

123.    Despite its latest theory for denying AIS's properly submitted claims, Anthem nevertheless committed to resolving the dispute amicably and renegotiating the Agreement.

124.    In light of Anthem's promise of an informal resolution, AIS in good faith temporarily halted the submission of thousands of per diem claims to Anthem so that the parties could pursue an informal resolution.

125.    Toward that end, AIS repeatedly reached out to Anthem to resolve the dispute.

126.    But during every meeting, Anthem again provided a range of ever-shifting excuses for delaying and refusing to pay AIS's claims.

127.    Among other excuses, Anthem repeatedly claimed that it had to "consult" with certain personnel on the per diem billing issue before coming to any resolution with AIS.

-17-

128.     On June 25, 2022 – one year after AIS first disputed Anthem's audit of AIS's claims – Anthem informed AIS that, after reviewing the Audited Claims again, they were properly billed and payable under the Agreement.

129.     But Anthem never paid these per diem claims, or any other claims.

130.     Anthem instead spent several more months stalling negotiations and AIS's efforts to resolve the dispute.

131.     Then, in October 2022, Anthem informed AIS that it would not pay any of AIS's existing, withheld, or future per diem claims.

132.     As of the filing of this suit, Anthem owes AIS no less than $525,000 in outstanding per diem claims.

133.     AIS has notifed Anthem repeatedly about its wrongful conduct and sought to achieve a resolution.

134.     But Anthem has refused to engage.  It has ignored AIS's correspondence for weeks and months at a time.

135.     And even when Anthem has responded to AIS, it has falsely promised to pay AIS's claims – promises that it has serially broken.

136.     All the while, Anthem has refused to cease its unlawful conduct.  Anthem continues to deny AIS's drug and per diem claims and also refuses to pay and process thousands of them.

137.     Anthem also continues to recoup payments for drug claims.

138.     While Anthem has refused to pay AIS, or meaningfully engage in efforts to resolve the parties' dispute once and for all, AIS has continued to provide drugs and HIT services to Anthem's members to ensure they have access to AIS's vital and necessary care.

-18-

Because Anthem has refused to pay it, AIS has thus been caring for Anthem's members essentially for free.

## CAUSES OF ACTION

### COUNT I
**(Breach Of Contract)**

139.    AIS repeats and incorporates the allegations in Paragraphs 1 to 138 as if set forth fully herein.

140.    The Agreement is a valid contract under which Anthem owes AIS payment obligations.

141.    AIS has fully performed and continues to perform its obligations under the Agreement.

142.    AIS has provided – and continues to provide – HIT services and drugs to thousands of Anthem's members.

143.    AIS has further submitted its drug and per diem claims, including claims billed under Code S9328, in full compliance with the Agreement.

144.    Anthem is obligated to process and pay AIS's claims in accordance with the Agreement and NHIA Standards.  Agreement §§ 2.5-2.6 & 9.7.

145.    Anthem approved and paid AIS's drug and per diem claims for months without issue in accordance with the Agreement and NHIA Standards.

146.    The parties therefore had an established course of conduct and dealing whereby AIS billed its claims under the Agreement and NHIA Standards, and Anthem paid and approved AIS's claims.

147. Since October 2020, however, Anthem has denied AIS's drug and per diem claims and recouped payments for drug claims, all of which were submitted to Anthem in accordance with the Agreement and NHIA Standards.

148. Anthem has failed to provide any basis or justification for its refusal to pay AIS's claims.

149. Anthem has breached the Agreement by failing to process and pay AIS's drug claims in accordance with the Agreement, NHIA Standards, and the parties' established course of dealing.

150. Anthem has further breached the Agreement by failing to process and pay AIS's per diem claims, specifically claims submitted under Code S9328, in accordance with the Agreement, NHIA Standards, and the parties' established course of dealing.

151. The Agreement further prohibits Anthem from recouping any alleged overpayments for timely disputed claims. *See id.* § 2.7

152. Anthem must notify AIS of any alleged overpayment and afford AIS 30 days from the date of receipt to dispute the notice. *See id.*

153. The Agreement does not permit Anthem to recoup any overpayment if AIS timely disputes any such alleged overpayments. *See id.*

154. AIS timely disputed Anthem's notices of overpayment.

155. Anthem nevertheless has improperly and wrongfully recouped and continues to recoup payments for drug claims.

156. Anthem therefore has breached the Agreement by improperly recouping payments without providing notice to AIS.

157. AIS has suffered and continues to suffer ongoing harm as a result of Anthem's breaches.

-20-

158.    AIS is entitled to damages from Anthem, declaratory relief, as well as all other relief provided under Virginia and all other applicable laws.

## COUNT II
### (Anticipatory Breach Of Contract)

159.    AIS repeats and incorporates the allegations in Paragraphs 1 to 138 as if set forth fully herein.

160.    AIS and Anthem entered the Agreement in November 2019.

161.    The Agreement is a valid and binding contract.

162.    AIS has fully performed and continues to perform its obligations under the Agreement.

163.    AIS has provided drugs and HIT services to thousands of Anthem members.

164.    AIS has further submitted its drug and per diem claims in full compliance with the Agreement and NHIA Standards.

165.    Anthem is obligated to process and pay AIS's claims in accordance with the Agreement and NHIA Standards.  Agreement §§ 2.5-2.6 & 9.7.

166.    Since October 2020, however, Anthem has failed to pay AIS for its drug and per diem claims, including claims submitted under Code S9328.

167.    AIS repeatedly disputed Anthem's denials and refusal to pay its claims.

168.    Most recently, in May 2022, AIS sent Anthem a demand for payment for outstanding drug and per diem claims.

169.    In response, Anthem refused to pay AIS's current and future per diem claims.  It informed AIS that it could not submit per diem claims for any members who had their pumps refilled at a location other than the member's home.

-21-

170.     Anthem also informed AIS that it sought informally to resolve and negotiate the parties' dispute.

171.     Based on Anthem's representations that it would cooperate with AIS on an informal resolution, AIS in good faith refrained from submitting thousands of per diem claims while the parties negotiated a resolution.

172.     Despite months of AIS's good faith efforts to negotiate with Anthem, Anthem has refused to engage in any discussions to resolve the dispute.

173.     In the meantime, Anthem has continued to deny and recoup AIS's claims and demand that it provide Anthem members with drugs and HIT services.

174.     In October 2022, Anthem further informed AIS that it would not pay any of AIS's current or future per diem or drug claims.

175.     Anthem has unequivocally asserted that it will not process and pay AIS's claims in accordance with the Agreement.  *See* Agreement § 2.6 & Plan Compensation Schedule Attachment.

176.     Through its statements to AIS, Anthem has demonstrated an intent wholly inconsistent with the performance of its obligations under the parties' contract.

177.     Through its unequivocal statements and conduct, Anthem has effectively abandoned its obligations under the Agreement.

178.     As such, Anthem has anticipatorily breached the contract by refusing to perform under the Agreement and meet its payment obligations.

179.     AIS has provided and continues to provide drugs and HIT services to Anthem's members essentially for free.

180.     Nevertheless, Anthem has denied AIS payment for any current or future drugs or services provided to Anthem members under the Agreement for no valid reason.

181.     AIS has suffered and continues to suffer harm as a result of Anthem's anticipatory breach and unlawful conduct by being denied payment it is owed under the Agreement.

182.     AIS is entitled to damages from Anthem, declaratory relief, as well as all other relief provided under Virginia and all other applicable laws.

## COUNT III
### (Unjust Enrichment)

183.     AIS repeats and incorporates the allegations in Paragraphs 1 to 138 as if set forth fully herein.

184.     AIS has conferred substantial benefits on Anthem in the form of dispensing specially compounded drugs and providing HIT services to Anthem's members.

185.     AIS has expended significant time and resources dispensing drugs and providing HIT services to Anthem's members with the intent of receiving compensation from Anthem as their payor.

186.     Anthem has enjoyed the benefit of its members having access to AIS's drugs and HIT services without compensating or reimbursing AIS for such services.

187.     Equity and good conscience require Anthem to compensate AIS for the substantial benefits AIS has conferred on it and its members.

188.     AIS is entitled to damages and restitution from Anthem, as well as all other relief provided under Virginia and all other applicable laws.

<u>**COUNT IV**</u>
**(Declaratory Judgment Pursuant To 28 U.S.C. § 2201)**

189.     AIS repeats and incorporates the allegations in Paragraphs 1 to 138 as if set forth

fully herein.

190.     An actual controversy now exists between AIS and Anthem with respect to their

respective rights and duties under the Agreement.

191.     AIS contends Anthem has breached and continues to breach the Agreement by

failing to pay AIS's drug and per diem claims in compliance with the Agreement and improperly

recouping payments.

192.     AIS further contends that Anthem has anticipatorily breached the Agreement by

refusing to pay any of AIS's per diem and drug claims going forward.

193.     Pursuant to 28 U.S.C. § 2201, a judicial determination of the respective rights of

the parties is necessary and appropriate under the circumstances.

<u>**PRAYER FOR RELIEF**</u>

WHEREFORE, AIS prays for this Court to enter judgment against Anthem, granting the

following relief:

1.     Declarations that Anthem:

- Has breached the Agreement by improperly denying and failing to pay AIS's per diem claims, including claims submitted under Code S9328;

- Has breached the Agreement by improperly denying and failing to pay AIS's drug claims;

- Has breached the Agreement by wrongfully recouping payments in the face of AIS's dispute of such recoupments;

- Has anticipatorily breached the Agreement by refusing to pay all current and future drug and per diem claims submitted by AIS; and

- Has been unjustly enriched at the expense of AIS on account of Anthem's members receiving drugs and services without compensating AIS.

2. Actual damages in an amount according to proof;

3. Attorney's fees and costs;

4. Pre-judgment and post-judgment and other interest on all monetary damages, as permitted by law; and

5. Any such further relief that the Court deems just and proper.

## <u>DEMAND FOR JURY TRIAL</u>

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, AIS demands a trial by jury in this action on all issues so triable as of right.

Dated: November 23, 2022

Respectfully submitted,

By: /s/ Paul A. Werner

Paul A. Werner (VSB No. 48910)
Imad Matini (VSB No. 90126)
Amanda Witt (*pro hac vice to be submitted*)
Kathryn Ryan (*pro hac vice to be submitted*)
SHEPPARD MULLIN RICHTER & HAMPTON, LLP
2099 Pennsylvania Avenue, NW, Suite 100
Washington, DC 20006-6801
(202) 747-1931 (Phone)
(202) 747-3912 (Fax)
pwerner@sheppardmullin.com
imatini@sheppardmullin.com
awitt@sheppardmullin.com
katryan@sheppardmullin.com

*Attorneys for Plaintiff Bond Pharmacy, Inc.*

-26-

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

Bond Pharmacy, Inc., d/b/a AIS Healthcare

**(b)** County of Residence of First Listed Plaintiff _____
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Sheppard Mullin Richter & Hampton LLP
2099 Pennsylvania Ave., NW, Suite 100
Washington, DC, 20006

## DEFENDANTS

Anthem Health Plans of Virginia, Inc., d/b/a Anthem Blue Cross and Blue Shield

County of Residence of First Listed Defendant    Henrico
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- [ ] 1 U.S. Government Plaintiff
- [ ] 2 U.S. Government Defendant
- [ ] 3 Federal Question *(U.S. Government Not a Party)*
- [x] 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [ ] 1 | Incorporated *or* Principal Place of Business In This State | [ ] 4 | [x] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated *and* Principal Place of Business In Another State | [x] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| [ ] 110 Insurance | **PERSONAL INJURY** / **PERSONAL INJURY** | [ ] 625 Drug Related Seizure of Property 21 USC 881 | [ ] 422 Appeal 28 USC 158 | [ ] 375 False Claims Act |
| [ ] 120 Marine | [ ] 310 Airplane / [ ] 365 Personal Injury - | [ ] 690 Other | [ ] 423 Withdrawal | [ ] 376 Qui Tam (31 USC |
| [ ] 130 Miller Act | [ ] 315 Airplane Product   Product Liability | | 28 USC 157 | 3729(a)) |
| [ ] 140 Negotiable Instrument |   Liability / [ ] 367 Health Care/ | | **INTELLECTUAL** | [ ] 400 State Reapportionment |
| [ ] 150 Recovery of Overpayment | [ ] 320 Assault, Libel &   Pharmaceutical | | **PROPERTY RIGHTS** | [ ] 410 Antitrust |
|   & Enforcement of Judgment |   Slander   Personal Injury | | [ ] 820 Copyrights | [ ] 430 Banks and Banking |
| [ ] 151 Medicare Act | [ ] 330 Federal Employers'   Product Liability | | [ ] 830 Patent | [ ] 450 Commerce |
| [ ] 152 Recovery of Defaulted |   Liability / [ ] 368 Asbestos Personal | | [ ] 835 Patent - Abbreviated | [ ] 460 Deportation |
|   Student Loans | [ ] 340 Marine   Injury Product | | New Drug Application | [ ] 470 Racketeer Influenced and |
|   (Excludes Veterans) | [ ] 345 Marine Product   Liability | | [ ] 840 Trademark | Corrupt Organizations |
| [ ] 153 Recovery of Overpayment |   Liability | **PERSONAL PROPERTY** | [ ] 880 Defend Trade Secrets | [ ] 480 Consumer Credit |
|   of Veteran's Benefits | [ ] 350 Motor Vehicle / [ ] 370 Other Fraud | **LABOR** | Act of 2016 | (15 USC 1681 or 1692) |
| [ ] 160 Stockholders' Suits | [ ] 355 Motor Vehicle / [ ] 371 Truth in Lending | [ ] 710 Fair Labor Standards | | [ ] 485 Telephone Consumer |
| [x] 190 Other Contract |   Product Liability / [ ] 380 Other Personal | Act | **SOCIAL SECURITY** | Protection Act |
| [ ] 195 Contract Product Liability | [ ] 360 Other Personal   Property Damage | [ ] 720 Labor/Management | [ ] 861 HIA (1395ff) | [ ] 490 Cable/Sat TV |
| [ ] 196 Franchise |   Injury / [ ] 385 Property Damage | Relations | [ ] 862 Black Lung (923) | [ ] 850 Securities/Commodities/ |
| | [ ] 362 Personal Injury -   Product Liability | [ ] 740 Railway Labor Act | [ ] 863 DIWC/DIWW (405(g)) | Exchange |
| | Medical Malpractice | [ ] 751 Family and Medical | [ ] 864 SSID Title XVI | [ ] 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** / **PRISONER PETITIONS** | Leave Act | [ ] 865 RSI (405(g)) | [ ] 891 Agricultural Acts |
| [ ] 210 Land Condemnation | [ ] 440 Other Civil Rights / **Habeas Corpus:** | [ ] 790 Other Labor Litigation | | [ ] 893 Environmental Matters |
| [ ] 220 Foreclosure | [ ] 441 Voting / [ ] 463 Alien Detainee | [ ] 791 Employee Retirement | **FEDERAL TAX SUITS** | [ ] 895 Freedom of Information |
| [ ] 230 Rent Lease & Ejectment | [ ] 442 Employment / [ ] 510 Motions to Vacate | Income Security Act | [ ] 870 Taxes (U.S. Plaintiff | Act |
| [ ] 240 Torts to Land | [ ] 443 Housing/   Sentence | | or Defendant) | [ ] 896 Arbitration |
| [ ] 245 Tort Product Liability |   Accommodations / [ ] 530 General | | [ ] 871 IRS—Third Party | [ ] 899 Administrative Procedure |
| [ ] 290 All Other Real Property | [ ] 445 Amer. w/Disabilities - / [ ] 535 Death Penalty | **IMMIGRATION** | 26 USC 7609 | Act/Review or Appeal of |
| |   Employment / **Other:** | [ ] 462 Naturalization Application | | Agency Decision |
| | [ ] 446 Amer. w/Disabilities - / [ ] 540 Mandamus & Other | [ ] 465 Other Immigration | | [ ] 950 Constitutionality of |
| |   Other / [ ] 550 Civil Rights | Actions | | State Statutes |
| | [ ] 448 Education / [ ] 555 Prison Condition | | | |
| | / [ ] 560 Civil Detainee - | | | |
| | Conditions of | | | |
| | Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- [x] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from Another District *(specify)*
- [ ] 6 Multidistrict Litigation - Transfer
- [ ] 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28 U.S.C § 1332; 28 U.S.C. § 2201

Brief description of cause:
Asserting claims for breach of contract, anticipatory breach of contract, and unjust enrichment, and seeking declaratory judgment

## VII. REQUESTED IN COMPLAINT:

- [ ] CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

**DEMAND $** $525,000

CHECK YES only if demanded in complaint:
**JURY DEMAND:** [x] Yes [ ] No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE _____    DOCKET NUMBER _____

DATE    11/23/2022

SIGNATURE OF ATTORNEY OF RECORD    /s/ Paul A. Werner

**FOR OFFICE USE ONLY**

RECEIPT # _____    AMOUNT _____    APPLYING IFP _____    JUDGE _____    MAG. JUDGE _____

# EXHIBIT 1

<u>Exhibit A</u>
<u>Settlement Statement</u>

Blue Cross & Blue Shield of Mississippi, A Mutual Insurance Company ("BCBSMS") and the Blue Cross Blue Shield Association ("BCBSA") have evaluated the billings by Bond Pharmacy dba AIS Healthcare ("AIS") that included per diems, and have now concluded, after further evaluation that all of AIS' bills to BCBSMS, including without limitation AIS' bills using HCPCS Code S9328 for per diems, did not constitute fraud, and made no finding of waste or abuse.

AIS, BCBSMS, BCBSA, and Advanced Health Systems, Inc. ("AHS") have settled all disputes arising out of, relating to, or concerning the claims and issues asserted by the parties to the legal proceedings in the lawsuit known as Bond Pharmacy d/b/a Advanced Infusion Solutions v. Advanced Health Systems, Inc. and Blue Cross & Blue Shield of Mississippi, A Mutual Insurance Company, United States District Court for the Southern District of Mississippi, Civil Action No. 3:21-cv-123-KHJ-MTP. The settlement includes an arm's length negotiated resolution on mutually acceptable terms by which a confidential amount will be paid to AIS for past services.

There will be a new participation agreement going forward between AIS and BCBSMS that will allow enrollees of the Federal Employee Health Benefits Plan ("FEP") co-administered by BCBSA and its licensee Blue Cross and Blue Shield companies to receive services from AIS as a participating provider for FEP. The settlement does not require an admission of wrongdoing by anyone. The rest of the terms of the settlement are confidential except that (a) AIS can provide this Exhibit A to the Settlement Statement to anyone, and (b) BCBSMS, BCBSA and AHS will and hereby do confirm the authenticity and accuracy of this Settlement Statement. The parties to the confidential settlement agreement have approved this Settlement Statement.

Agreed on October 14, 2022 between Blue Cross & Blue Shield of Mississippi, A Mutual Insurance Company, the Blue Cross Blue Shield Association, and Bond Pharmacy dba AIS Healthcare.